## COLD METAL PROCESS CO. v. ALUMINUM CO. OF AMERICA.

## UNION NAT. BANK OF YOUNGSTOWN, OHIO, v. THOMPSON WIRE CO.

Misc. Civil Action No. 6150—93; Civil Action No. 6797.

District Court, D. Massachusetts.

Dec. 19, 1947.

In Misc. Civil Action No. 6150—93:

Whittemore, Hulbert & Belknap, of Detroit, Mich. (Clarence B. Zewadski, of De-

troit, Mich., of counsel), Baker, Hostetler & Patterson, of Cleveland, Ohio (Howard F. Burns, of Cleveland, Ohio, of counsel), Stebbins, Blenko & Webb, of Pittsburgh, Pa. (William H. Webb, of Pittsburgh, Pa., of counsel), Choate, Hall & Stewart, of Boston, Mass. (Bailey Aldrich, of Boston, Mass., of counsel), for plaintiff.

J. N. Welch and Hale & Dorr, all of Boston, Mass., and Wilfred D. Keith, of New York City, for defendant.

In Civil Action No. 6797:

Choate, Hall & Stewart, of Boston, Mass. (Bailey Aldrich, of Boston, Mass., of counsel), Stebbins, Blenko & Webb, of Pittsburgh, Pa. (William H. Webb, of Pittsburgh, Pa., of counsel), for plaintiff.

Hale & Dorr, J. N. Welch, and Anthony Brayton, all of Boston, Mass., for defendant.

SWEENEY, District Judge.

In each of these two cases there is before this Court a motion for an order to compel answers to certain questions propounded to one Dr. Martin J. Buerger at a taking of his deposition. Both motions pertain to the same questions. In the case of Union National Bank of Youngstown, Ohio, v. Thompson Wire Company, the original action is pending in the District of Massachusetts; the case of Cold Metal Process Company v. Aluminum Company of America is pending in the Eastern District of Tennessee, Northern Division. To simplify matters, I will deal in this opinion only with the case of Cold Metal Process Company v. Aluminum Company of America, but the decision will likewise apply to the case of Union National Bank of Youngstown, Ohio, v. Thompson Wire Company.

The Cold Metal Process Company (hereinafter referred to as "Cold Metal") is the owner of Patent No. 1,744,016, issued January 14, 1930, which covers a process for simplifying the cold-rolling of steel and other materials to thin strip form without the intermediate annealing processes theretofore practiced. In the Tennessee suit, Cold Metal has charged the Aluminum Company of America with infringing its patent. One of the defenses raised by the Aluminum Company of America is that the patent is invalid by reason of the failure on the part of Cold Metal to disclaim certain claims in its patent because the specifications and claims were not true. The alleged untruthful claims and specifications had to do with the random orientation of the product processed under the method outlined in the patent. The evidence before me indicates that, sometime early in 1943, Cold Metal, owner of the patent, had cause to believe that someone, either the United States or a competitor, was going to attack the validity of its patent, particularly on the ground above mentioned. As a result of this information, Cold Metal through its attorneys, Stebbins, Blenko & Webb, secured the services of Dr. Martin J. Buerger of the Massachusetts Institute of Technology to make X-ray examinations of products manufactured under the old method and products manufactured under the patent method. The purpose of this inquiry was to determine whether or not the random orientation claimed in their patent was justified and true. Dr. Buerger is one of the outstanding scientists engaged in Mineralogy and Crystallography. Until the close of 1945 Dr. Buerger worked under the directions of the attorneys and made some reports to them, either oral or written. Late in 1945 he had to stop the work on which he was engaged for Cold Metal to do Government work. For the purposes of this decision I must assume that he did come to some conclusion whether the claims and specifications of the patent were justified and true, and so reported to the attorneys for Cold Metal.

The Cold Metal-Aluminum action was filed on March 20, 1945, in the Eastern District of Tennessee. The case of Union National Bank of Youngstown, Ohio, v. Thompson Wire Company was filed in the District of Massachusetts on May 21, 1947. After Dr. Buerger stopped working for Cold Metal, a continuation of his work was picked up by one Dr. Sachs of the Case Institute of Technology in Cleveland, Ohio. Prior to either of these suits, the United States had sought the cancellation of this patent on the grounds of fraud in

the procurement of the patent or, in the alternative, of a mutual mistake of fact between the applicant and the Commissioner. That case was decided against the United States on August 11, 1945, United States v. Cold Metal Process Co. et al., D. C., 62 F.Supp. 127, and was affirmed by the Circuit Court of Appeals for the Sixth Circuit in a decision rendered on December 12, 1947, 164 F.2d 754.

After the defendant had amended its answer in late 1946 to set up the defense of invalidity as outlined above, it sought to take the deposition of Dr. Sachs, who succeeded Dr. Buerger in X-raying Cold Metal's products. Dr. Sachs refused to answer certain questions put to him by counsel for the Aluminum Company and an order was secured in the District Court of Ohio for the Northern District compelling Dr. Sachs to answer the specific questions. Cold Metal Process Co. v. Aluminum Co. of America, D. C., 7 F. R. D. 425. In spite of the Court's order the witness, Dr. Sachs, has refused to answer the questions and the case is now on appeal to the Circuit Court of Appeals.

On November 5, 1947, the testimony of Dr. Martin J. Buerger was taken pursuant to notice. The record discloses that such testimony as Dr. Buerger gave was incorporated into both of these actions. The testimony given by Dr. Buerger indicates that he was retained by Stebbins, Blenko & Webb, for the general purpose of checking upon the truth of the specifications and claims of their patent. He answered questions freely except when his own counsel advised him not to. He was represented at the hearing by Mr. Webb, who is also counsel for Cold Metal. Whenever the inquiries of counsel for the Aluminum Company were directed to the results of his work, or communications with relation to its progress or, in fact, anything which touched upon the work that he was doing for Cold Metal under the direction of their attorneys, he was advised not to answer, the claim being advanced that the relationship between Dr. Buerger and Cold Metal and its attorneys was a confidential, privileged relationship, and one into which inquiry was not justified by opposing counsel. The witness followed the advice and did not answer. The present motion seeks to compel answers and a complete divulgence of the results of the work which he did for Cold Metal.

■ It is well established that such agents as an attorney uses in his office in the preparation of cases, such as clerks and stenographers, may not be compelled to testify as to interoffice activities or communications because they are covered by the privilege rule. VIII Wigmore on Evidence, 3rd Ed., Sec. 2301, states that "The assistance of these agents being indispensable to his work, and the communications of the client being often necessarily committed to them by the attorney or by the client himself, the privilege must include all the persons who act as the attorney's agents". Whether we say that we are extending the rule of privilege to cover a situation such as the one presented here, or whether we say that the divulging of such confidential information is against public policy, we arrive at the same result.

[2] In Lewis et al. v. United Air Lines Transport Corporation et al., D. C., 32 F. Supp. 21, 23, a third party defendant sought to take the deposition of one Dr. Mehl, who had been employed as an expert by counsel for the defendant. The questioning had to do with regard to the cylinder of the engine of an airplane which had been involved in an accident. The witness was asked to describe certain tests made by him and his findings whether or not the cylinder was in proper condition. The witness refused to answer on the ground of privilege and, although the Court in its first decision denied that the privilege existed, on a rehearing it reversed its prior decision and decided that the witness should not be compelled to answer the inquiries. While the Court did not say that the results of the tests made by Dr. Mehl for his employer were privileged, it seemed to place its decision on the grounds of public policy, saying that:

"To permit a party by deposition to examine an expert of the opposite party before trial, to whom the latter has obligated

himself to pay a considerable sum of money, would be equivalent to taking another's property without making any compensation therefor. To permit parties to examine the expert witnesses of the other party in land condemnation and patent actions, where the evidence nearly all comes from expert witnesses, would cause confusion and probably would violate that provision of Rule 1 which provides that the rules 'shall be construed to secure the just, speedy, and inexpensive determination of every action.' "

Stated in another way, I think that public policy would seem to compel the extension of the privilege rule to the situation such as is presented here. See Lalance & Grosjean Mfg. Co. et al. v. Haberman Mfg. Co., C. C., 87 F. 563. While this is a very old case (1898), its reasoning seems to fit in with the reasoning of the United States Supreme Court in Hickman v. Taylor, 329 U.S. 495, 510, 67 S.Ct. 385, 393. In the latter case, the Court stated, "Not even the most liberal of discovery theories can justify unwarranted inquiries into the files and the mental impressions of an attorney." It would seem that, so long as the deponent Buerger was acting as an associate or an assistant counsel in the preparation of a confidential report to be used by Cold Metal, either in making up its mind as to its claim or in preparation of a defense to a possible action, he is within the privilege rule. While the movant relies upon Hickman v. Taylor, supra, I can find nothing in that decision which will sustain its claim to examine Dr. Buerger as a matter of right. On the contrary, I think that the case of Hickman v. Taylor, supra, is ample authority for the denial of the motion.

In each of the cases the motion to compel answers to the questions which were not answered at the taking of the Buerger deposition is denied.