## VIRGINIA METAL PRODUCTS CORPO-RATION v. HARTFORD ACCIDENT & INDEMNITY CO.

United States District Court
S. D. New York.
Aug. 4, 1950.

· Leo C. Fennelly, New York City, for plaintiff.

Leo T. Kissam, New York City, for defendant.

McGOHEY, District Judge.

The plaintiff moves (1) to punish the defendant for contempt for failure to obey a subpoena duces tecum returnable on an examination before trial; (2) to compel the Vice President and the Claim Agent of the defendant to answer questions, and for costs of and counsel fees for this

motion; (3) for discovery and inspection of certain records of the defendant.

The action is on a fidelity bond for $51,000, the amount of losses sustained by the plaintiff through alleged dishonest acts of its former Treasurer, one James Hay Taylor. He is charged in the complaint with having shipped $85,000 worth of plaintiff's steel to one Samuel Lazarus, knowing it would not be paid for, under a secret agreement to receive half the profit from its sale by Lazarus; and $7500 worth of plaintiff's steel to one M. Louis Shaffer under a similar secret agreement. He is also charged with conversion of $5000.

The answer, after general denials, alleges in defense that the plaintiff, although it had knowledge of prior dishonest acts of Taylor, nevertheless represented to the defendant in obtaining the bond that it had no such knowledge; that the plaintiff ratified the alleged dishonest acts of Taylor and is thereby estopped to sue on the bond because of them.

The plaintiff served notice to examine the defendant through its Vice President, George T. Merrick, and E. J. O'Donnell, its Claim Agent, on May 19, 1950. On May 17 a subpoena duces tecum was served on Merrick to produce the following:

"1. All fidelity bonds issued or in effect between the defendant and the plaintiff or its predecessor between January 1, 1947, through May, 1949.

"2. Any notice of claim and proof of loss submitted by plaintiff to the defendant during 1949 involving acts of James Hay Taylor.

"3. All inter-office memoranda, reports, correspondence, statements of witnesses, accountant's reports and all other papers and documents pertaining to the investigation of the loss of the plaintiff alleged to have been caused by James Hay Taylor and the plaintiff's claim therefor."

None of these items was produced, nor was any application made to the Court to vacate or modify the subpoena.

Early in his examination Merrick claimed to be unable to answer a proper question accurately from his recollection alone.

He then admitted that among the papers subpoenaed but not produced were records which would refresh his recollection. This happened repeatedly, so that the plaintiff was thoroughly frustrated. Merrick was extremely evasive as to the whereabouts of the records, although he must have known, as his counsel finally admitted, that they were in the latter's office here in New York, only a few blocks from the office where the examination was being conducted. Moreover, in several instances he obviously had some knowledge of the subject matter of the question but declined to give any answer unless he could give it precisely, which he said he could not do without the unproduced records.

The witness O'Donnell was even more evasive. He pretended, for example, to be utterly ignorant of the subject matter of a letter which he admitted dictating, and pretended to require his unproduced files in order to answer any but the most innocuous questions.

■ This attitude of the witnesses, added to the disobedience of the subpoena, made the examination a farcical waste of time. Defendant's counsel, however, assumes responsibility for the disobedience of the subpoena, having advised the defendant that in his opinion it was too broad and need not be obeyed. In view of this, the motion to punish the defendant for contempt and for counsel fees will be denied. But the conduct of counsel is not thereby approved. Indeed it is definitely disapproved. The rules provide ample means for securing the Court's ruling on subpoenas thought to be oppressive. And, though there was plenty of time to do so, no attempt to test the subpoena was made.

■■ The first two items demanded in the subpoena were clearly proper. They must be produced. It is argued that the third item is too broad. In view of the witnesses' deliberate evasiveness, and their insistence that their recollections required constant refreshing, it is apparent that the papers called for in the third item will be needed to enable them to answer. Accordingly, they too will have to be produced, as demanded. And the witnesses

.

376

Merrick and O'Donnell will be required to answer respensively the questions which they either failed to answer at all or responded to evasively.

■ The motion for discovery and inspection comprises six items. The plaintiff's demand is clearly right as to items 1, 2, 3 and 5. Item 3 is in no sense the "work product" of counsel. The fact that the defendant's investigator was a lawyer does not change the situation.[1] The statements were taken before suit, indeed immediately after plaintiff notified the defendant of the "possibility of loss," and before the plaintiff filed its proof of claim. They relate to facts which go to the heart of the case. Item 4 calls for reports of investigators "as to interviews with Taylor, Lazarus or any other person which would tend to show the dishonesty of Taylor." Such reports usually contain the writer's impressions of and conclusions about persons interviewed, and his recollections of their statements. These should not be disclosed.[2] But if these reports contain actual statements of the witnesses in their own language, as distinguished from the reporter's accounts thereof, the statements must be produced. And in any event the names and addresses of the witnesses must be disclosed. Item 6 calls for: "Accountant's report of Councillor & Company, Washington, D. C. made prior to the institution of this suit who were permitted to inspect the books and records of the plaintiff on the understanding that a copy of the report, which would show the dishonesty of Taylor, would be furnished to the plaintiff."

■ Ordinarily, the reports of experts are not required to be produced,[3] and it is urged that the accountant's report falls in this class. However that may be, it is not denied that the defendant's accountants made their examination prior to suit, presumably to ascertain the full amount of the loss, and their report undoubtedly forms at least part of the basis on which rests the defense that plaintiff knew of and condoned prior dishonest acts of Taylor, and ratified those which are involved in the present suit. Plaintiff claims it was agreed by the defendant that a copy of this report would be furnished, and this is not denied. I have already ruled that other records of the defendant bearing on this must be produced and that the witnesses must answer questions concerning the facts of these defenses. In order that their defective recollections may not further thwart examination, the accountants' reports must be disclosed to the plaintiff.

I have considered the cases cited in the defendant's brief and I find nothing in them requiring me to rule differently on the facts before me here.

Settle order in accordance with this opinion.

1. Matthies v. Peter F. Connelly Co., D.C., E.D.N.Y., 2 F.R.D. 277; Hughes v. Pennsylvania R., D.C., E.D.N.Y., 7 F.R. D. 737.

2. Hickman v. Taylor, 329 U.S. 495, 67 S.Ct. 385, 91 L.Ed. 451.

3. Cold Metal Process Co. v. Aluminum Co. of America, D.C., D.Mass., 7 F.R.D. 684.