### The CONNECTICUT MUTUAL LIFE INSURANCE COMPANY, Plaintiff,

### v.

### Paul V. SHIELDS et al., Defendants, and six related cases.

United States District Court, S. D. New York.
March 30, 1955.

See also 17 F.R.D. 273.

Davis Polk Wardwell Sunderland & Kiendl, New York City, for plaintiffs.

Begley, Diamond & Begley, Schenectady, N. Y., for defendant Parsons, Brinckerhoff, Hall & Macdonald. Cahill, Gordon, Reindel & Ohl, New York City, of counsel.

Cahill, Gordon, Reindel & Ohl, New York City, for defendants Shields & Co.

Wattress & Donovan, New York City, for defendants Leonard L. Lawrence and Robert E. Schweser Co.

Asbury S. Edmonds, New York City, for defendant Marshall Dancy.

IRVING, R. KAUFMAN, District Judge. ·

This application is to compel answers by the witness Lawrence S. Waterbury, a defendant in this action, and a member of the engineering firm of defendant Parsons, Brinckerhoff, Hall & Macdonald. This is one of several related motions heard together.

The actions instituted in this court consist of seven separate suits for rescission and damages for misrepresentations brought against the underwriters and the engineering firm and its partners, arising out of the sale of Bellevue Bridge 4% Revenue Bonds, dated November 1, 1950. The misrepresentations, allegedly relied upon by the purchaser-plaintiffs, relate to the estimated toll traffic for the bridge and the state of the access roads to and from the bridge, purported to be a by-pass around the metropolitan area of Omaha and Council Bluffs. It is contended that these roads were never rebuilt or improved as it was contemplated and represented, and that as a result the 1,111 cars held out to prospective purchasers as the average annual daily traffic over the bridge for the first year has not materialized and the traffic has remained at around 100 cars a day. The bonds are now in default for non-payment.

The witness Waterbury prepared and signed a traffic and earnings statement dated October 18, 1950, which was summarized in the bond offering circular of the Bellevue Bridge Commission (Nebraska). It is claimed the misrepresentations are contained in the traffic report and in the circular, under the imprint of the defendants Shields & Company.

The defendant firm of Parsons, Brinckerhoff, Hall & Macdonald are consulting engineers and their opinion as to the contemplated toll revenue over the projected bridge was given much weight. During the course of Waterbury's deposition, the witness was asked to give the basis for the 750 car bridge traffic estimation contained in a letter of September 19, 1950 (Defendant's Exhibit 3-B for identification) which the witness signed, and the basis for the 1,111 car estimation (Plaintiffs' Exhibit 76 for identification). The witness urges that to be required to furnish this would necessitate making involved, tedious and costly calculations. In effect, he urges that he would be doing work which plaintiffs should do in preparation for trial and would be incurring costs which ordinarily fall upon the plaintiffs.

I do not agree with this and I believe that the fallaciousness of this argument is brought about by erroneously equating the position of Waterbury, a defendant in this action, with that of an expert witness, hired by one of the litigants to do expert work for that litigant in preparation for trial. Waterbury does not fall into the expert witness category. The nub of plaintiffs' argument is that Waterbury either by carelessness, gross error, or deliberate misrepresentation misstated the facts with respect to the contemplated number of cars which would travel over the bridge.

I have read relevant portions of Waterbury's examination and it is quite apparent that Waterbury made calculations

prior to the inception of the litigation, and that these calculations formed the basis for his conclusions as to the number of cars that would travel over the projected bridge daily. While it appears that Plaintiffs' Exhibit 76 for identification, which purported to represent the estimate of the sources from which the proposed Bellevue Bridge would draw its traffic, was prepared by Mr. Waterbury's assistant, Jerome M. Fisher, it is also quite clear that Mr. Waterbury revised Mr. Fisher's figures upwards, ultimately arriving at the 1,111 car daily bridge traffic estimation and this revision must have been based on some facts in the possession of Waterbury.

The witness has undoubtedly been misled, in refusing to answer the questions and to make the calculations which are directly in issue in this litigation, by that line of cases which holds that an expert engaged by the adverse party in preparation for trial will not be required to furnish reports and submit to extensive examination, in the absence of a showing of good cause. But Waterbury cannot immunize himself with this rule by arguing that he is an expert in the field in which he is being examined, when the pre-litigation calculations made by him form an essential part of plaintiffs' case against the defendants. In short, while Waterbury's answers might include the expert opinion of a witness, in the context of this case it will amount to no more than a statement of facts by a factual witness to the events which form the subject matter of the action. See Moran v. Pittsburgh-Des Moines Steel Co., D.C.W.D.Pa.1947, 6 F.R.D. 594.

Accordingly, the witness is directed to answer the questions aimed at eliciting the basis for the calculations in Defendants' Exhibit 3 for identification, and in Plaintiffs' Exhibit 76 for identification; and if the documents showing the calculations made by Waterbury in arriving at the estimated figures are not now available in the files of Parsons, Brinckerhoff, Hall & Macdonald, and the basis

for such calculations not available either, the witness will be required to reconstruct his calculations and may be examined as to the steps followed by him in arriving at his final calculations.

Settle order.