GUILFORD NATIONAL BANK OF
GREENSBORO, Administrator, c.t.a.,
d.b.n., of the Estate of Jesse M. Coble,
Deceased, Plaintiff,

v.

SOUTHERN RAILWAY COMPANY, De-
fendant and Third-Party Plaintiff (Gar-
land Batchelor, Executor of the Estate
of Annie J. Coble, Deceased, Third-Par-
ty Defendant).

No. C–185–G–58.

United States District Court
M. D. North Carolina,
Greensboro Division.

Jan. 22, 1960.

Jordan, Wright, Henson & Nichols, Greensboro, N. C., for plaintiff.

L. P. McLendon, Sr., and L. P. McLendon, Jr., Greensboro, N. C., and W. T. Joyner, Raleigh, N. C., for defendant Southern Ry. Co.

Beverly C. Moore and D. Newton Farnell, Jr., Greensboro, N. C., for third-party defendant.

STANLEY, District Judge.

The plaintiff has moved under Rule 34, Federal Rules of Civil Procedure, 28 U.S.C.A., for an order requiring the defendant, Southern Railway Company, to produce, and permit plaintiff to inspect, copy and photograph various specified documents, papers and records.

This action arises out of a train-automobile crossing collision which occurred on the evening of July 13, 1958, in Guilford County, North Carolina. The plaintiff's testator and testator's wife, who were the only occupants of the automobile, were killed instantly in the collision.

While the plaintiff did not qualify as the administrator of the estate of Jesse M. Coble, deceased, until July 24, 1958, and plaintiff's attorneys were not formally retained until August 7, 1958, said attorneys were first called in reference to their availability to handle the case by a friend of the Coble family on the afternoon of July 16, 1958, and began an investigation of the collision on the afternoon of July 18, 1958. A witness was interviewed by one or more of the plaintiff's attorneys on the afternoon of July 19, 1958, and other witnesses were interviewed on July 21 and 22, 1958, but no written statements were obtained from any of the witnesses. The attorneys who are handling the case for the plaintiff are competent and experienced in personal injury litigation.

The plaintiff's testator was engaged in bridge and road construction work and his estate was amply solvent at the time of his death.

The defendant, Southern Railway Company, began its investigation of the collision immediately after it occurred, and on the day following the collision secured written statements from six witnesses and completed the taking of all of the witnesses' statements, except three, on July 19, 1958. The written statements of the remaining three witnesses were taken on August 11 and September 8, 1958.

This suit was commenced on September 19, 1958, and answer and third-party complaint were filed on November 17, 1958. The pleadings were completed and issue joined on January 13, 1959.

On January 26, 1959, the plaintiff served on the defendant, Southern Railway Company, pursuant to Rule 33, Federal Rules of Civil Procedure, 28 U.S.C.A., a list of forty-six interrogatories. Interrogatory No. 40 demanded the names and addresses of all persons from whom written statements were obtained in the course of the investigation made by the defendant.

On February 27, 1959, the defendant answered certain interrogatories and objected to others. Thereafter, on April 2, 1959, at a pre-trial hearing, the defendant waived its objection to Interrogatory No. 40 requesting the names and addresses of all witnesses from whom it had secured statements, and furnished to the plaintiff the names and addresses of said witnesses, as well as the name and address of the Southern

Railway Company agent who conducted the investigation. In addition to this information, the plaintiff had previously been given a complete list of the names and addresses of the crew operating the defendant's train at the time of the collision.

On May 11, 1959, the defendant, Southern Railway Company, pursuant to Rule 33, Federal Rules of Civil Procedure, 28 U.S.C.A., served the plaintiff with eighty-six interrogatories. These interrogatories were answered by the plaintiff on September 15, 1959, the time for answering being extended by agreement of counsel, with the approval of the court.

The plaintiff and its attorneys have taken no action under the Federal Rules of Civil Procedure, or otherwise, to examine under oath any of the witnesses whose written statements were secured by the defendant during the course of its investigation. No demand or request has been made on the defendant to make any of its crew available for examination by the plaintiff and its attorneys. The plaintiff has, however, advised the court that it intends to examine the defendant's train crew under oath after the written statements of the witnesses have been furnished to the plaintiff pursuant to its motion for production, inspection and copying of documents.

The originals of the statements of the witnesses secured by the Claim Department of the defendant are in the possession and custody of W. H. Barnett, Claim Agent for Southern Railway Company, Greensboro, North Carolina, and copies are in the possession of the attorneys who are defending the case for Southern Railway Company.

On August 25, 1959, the plaintiff moved under Rule 34, Federal Rules of Civil Procedure, 28 U.S.C.A., for an order requiring the defendant, Southern Railway Company, to produce, and to permit plaintiff to inspect, copy and photograph, each of the following documents, photographs and diagrams:

(1) The Southern Railway System's passenger train schedule in effect from May 11, 1958, to August 10, 1958, under which the defendant's Train No. 38, "The Crescent", was being operated on July 13, 1958.

(2) All records, including reports or bills, relating to the repairs which were made to the locomotive of said train after the collision which occurred on July 13, 1958, including any descriptions of the nature and extent of the damage which necessitated said repairs.

(3) The written report of the physical and mental examination of Lucian O. Woodson, the engineer who was operating the defendant's locomotive and train of cars at the time of the collision on July 13, 1958, which was made by Dr. Jay L. Smith, Jr., following his examination of Lucian O. Woodson on October 29, 1958.

(4) The written reports of the regular annual medical examinations of Lucian O. Woodson which were made and delivered to the defendant for the years 1956 and 1957, that is, the two reports of the two examinations immediately preceding the collision which occurred on July 13, 1958.

(5) The records and reports in the defendant's file with reference to other collisions and accidents which occurred at what is known as the Hilltop Road grade crossing in Greensboro, North Carolina, during the ten years immediately prior to July 13, 1958.

(6) All letters or other written communications in the possession of the defendant which the defendant received from any official or employee of the City of Greensboro prior to July 13, 1958, with reference to the maintenance of the Hilltop Road grade crossing, or the right-of-way adjacent thereto, or the signs and signals located in the

vicinity of the crossing, or the signs and signals which the City of Greensboro, or its officials, deemed necessary or desirable to be erected at said crossing.

(7) All letters or other written communications in the possession of the defendant which the defendant received from any official or employee of the State Highway Commission of North Carolina, formerly known as the State Highway & Public Works Commission, prior to July 13, 1958, with reference to the maintenance of the Hilltop Road grade crossing, or the right-of-way adjacent thereto, or the signs and signals located in the vicinity of the crossing, or the signs and signals which the State Highway Commission of North Carolina, formerly known as the State Highway & Public Works Commission, or its officials, deemed necessary or desirable to be erected at said crossing.

(8) All reports of inter-office memoranda made during the period from July 12, 1948, to and including July 12, 1958, by any officer, employee or agent of the defendant who had the responsibility or duty of making recommendations with respect to the erection or installation by the defendant of automatic crossing gates, or an automatic flashing red light electrical warning signal, or an automatic bell signal, or a combination of such signals, at the Hilltop Road grade crossing.

(9) The written statements obtained by the defendant from the following witnesses:

L. O. Woodson
J. W. Kimball
T. R. Smith
W. G. Lineberger
H. L. Watlington
M. A. Emrick
R. S. Nelson
Joseph L. Hill

K. G. Holt
Bobby Tilley
Harold Flynt
Z. G. Roberson
E. C. Greer
David Ottaway,

together with any other written statements of witnesses which were obtained by the defendant or any of its agents or employees.

(10) The reports of investigation of the collision which were made by R. I. Barr, Claim Agent, to W. R. King, Chief Claim Agent, subsequent to August 13, 1958.

(11) All photographs secured by the defendant in the course of its investigation of the collision of July 13, 1958, at the Hilltop Road grade crossing.

(12) The plat of survey, including any additional maps or diagrams, which the defendant caused to be prepared in connection with its investigation of said collision, including particularly, without limiting the generality hereof, the plat prepared by John F. Wachter, of Wachter Surveys, Inc.

(13) A copy of the Southern Railway Company's Rule Book, as furnished to each of its operating employees, revised as the same was in effect on July 13, 1958.

(14) Copies of any operational instructions, operational rules or regulations, and safety rules and regulations which had been promulgated by the defendant, or issued by the defendant to its operating employees, or posted by the defendant upon its bulletin boards, for the purpose of bringing the same to the attention of its operating employees, which were in force and effect on July 13, 1958, in addition to the rules and regulations set forth in the defendant's Rule Book which is referred to in Paragraph (13) above.

The defendant does not oppose the entry of an order requiring it to produce for inspection and copying by the plaintiff the matters sought in Items Nos. (1) through (6), inclusive, and Items Nos. (11) through (14), inclusive, of plaintiff's motion, but does oppose the motion insofar as it relates to matters sought in Items Nos. (7), (8), (9) and (10).

### Items Nos. (7) and (8)

■ The defendant opposes the production of the written communications and inter-office memoranda described in Items Nos. (7) and (8) on the ground that Section 136–20, General Statutes of North Carolina, charges the State Highway Commission with the responsibility of determining what railroad crossings are to be protected by signs and signalling devices, and the types of devices to be used, and that the documents and information sought would be completely irrelevant, incompetent and immaterial. No claim of privilege or prejudice is asserted.

It is not necessary that the materials sought would be admissible in evidence at the trial, but it is sufficient to order production if such documents appear reasonably calculated to lead to the discovery of admissible evidence. One of the acts of negligence alleged in the complaint is that the defendant maintained the crossing in a careless and dangerous manner, and failed to erect and maintain sufficient or adequate warning signs and signals to notify motorists of the presence of the railroad tracks, and the approach and passage of trains.

At this point in the proceeding, it cannot be said that the documents in question are irrelevant or would not lead to the discovery of admissible evidence, and it is my opinion that the motion for the production of the documents described in Items Nos. (7) and (8) should be granted.

The views of this court with respect to the construction of the discovery rules, and particularly the "good cause" requirement of Rule 34, will be more fully discussed below.

### Item No. (9)

The objection raised to the production of the witnesses' statements requested in Item No. (9) presents a more substantial question.

Rule 34, Federal Rules of Civil Procedure, 28 U.S.C.A., provides, in pertinent parts, that, upon a "showing [of] good cause therefor," the court may "order any party to produce and permit the inspection and copying or photographing, by or on behalf of the moving party, of any designated documents, papers, books, accounts, letters, photographs, objects, or tangible things, not privileged, which constitute or contain evidence relating to any of the matters within the scope of the examination permitted by Rule 26(b) and which are in his possession, custody, or control \* \* \*." Thus, the scope of Rule 34 is measured by Rule 26(b), which permits examinations "regarding any matter, not privileged, which is relevant to the subject matter involved \* \* \*," or "appears reasonably calculated to lead to the discovery of admissible evidence."

The defendant opposes the motion for the production of the witnesses' statements on the ground that they are privileged and that the plaintiff has failed to show "good cause" for their production. There is no claim that the statements have not been properly designated, or that they are irrelevant. It is conceded that the original statements are in the possession and custody of the defendant's claim agent.

The "good cause" requirement of Rule 34 has been the subject of frequent interpretations by the courts. Some courts have seized upon the language used in Hickman v. Taylor, 1947, 329 U.S. 495, 67 S.Ct. 385, 91 L.Ed. 451, the leading decision of the Supreme Court of the United States on the subject, to require "necessity" before ordering the production of statements obtained from witnesses. Wilson v. Capital Airlines, D.

C.E.D.N.C.1956, 19 F.R.D. 263; Alltmont v. United States, 3 Cir., 1950, 177 F.2d 971; Hanke v. Milwaukee Elec. Ry. and Transport Co., D.C.Wis.1947, 7 F.R. D. 540. However, the discernible trend in recent years is to construe all the discovery rules liberally, and to give the "good cause" requirement of Rule 34 a broad construction. Further, the modern view seems to equate "good cause" with relevancy and materiality. Hartford National Bank & Trust Company v. E. F. Drew & Company, D.C.Del.1952, 13 F.R.D. 127; Connecticut Mutual Life Insurance Co. v. Shields, D.C.S.D.N.Y. 1955, 17 F.R.D. 273; Karlsson v. Wolfson, D.C.Minn.1956, 18 F.R.D. 474; Houdry Process Corporation v. Commonwealth Oil Refining Co., D.C.S.D.N.Y. 1959, 24 F.R.D. 58. This trend to give a broad and liberal construction to the pre-trial discovery rules is stated by Judge Kaufman, in Connecticut Mutual Life Insurance Co. v. Shields, supra [17 F.R.D. 277], as follows:

"The modern trend of the courts has been to construe the rules liberally. Indeed, it is interesting to note that the Preliminary Draft of the Proposed Amendments to the Rules of Civil Procedure, prepared by the Advisory Committee on Rules (May 1954), provides for the elimination of the good cause requirement in Rule 34 for the inspection and copying of documents. (It is not contemplated that the Hickman v. Taylor, 329 U.S. 495, 67 S.Ct. 385, 91 L.Ed. 451, work product rule will be affected.) In line with this trend towards the elimination for formalism, the greater number of courts considering the question of good cause have decided that *good cause is established when it appears that the papers sought are relevant to the subject matter of the action.* In this district see Gunderson v. Moran, D. C., 15 F.R.D. 111; Wild v. Payson, D.C.S.D.N.Y.1946, 7 F.R.D. 495; Gielow v. Warner Bros., D.C.S.D.N. Y.1938, 26 F.Supp. 425. On the other hand, there are cases holding to the restricted view that good cause consists of something more than a showing of relevancy, as, for example, necessity, *but these cases do not seem to express the modern view."* (Emphasis supplied).

In Houdry Process Corporation v. Commonwealth Oil Refining Co., supra [24 F.R.D. 60], a case decided within the last year, it is stated:

"Rule 34, unlike other discovery proceedings, requires the moving party to make an affirmative showing of 'good cause' for the inspection of documents. Rather than give a fixed definition of the term, the courts have proceeded on a case-by-case basis, allowing practical considerations to determine whether the requisite showing has been made. * * *

"In this Circuit, the discernible trend is to give the term a broad construction, consistently keeping faith with the policy to construe pre-trial discovery rules liberally, in the absence of a showing of undue prejudice to the opposing party. *Recent cases have accepted relevancy as the predominant factor in determining whether good cause has been shown.* * * *" (Emphasis supplied.)

The trend toward accepting relevancy as the predominant factor in determining whether "good cause" has been shown seems to be the more reasonable and practical one, and the one in keeping with the holdings of the Court of Appeals for this circuit. New York Central R. Co. v. Carr, 4 Cir., 1957, 251 F.2d 433; Tiedman v. American Pigment Corporation, 4 Cir., 1958, 253 F.2d 803, 808. In the Tiedman case, Chief Judge Sobeloff, speaking for the court, said:

"It is, of course, true that a trial is not a sporting event, and discovery is founded upon the policy that the search for truth should be aided. Commercio E Industria Continental, S.A. v. Dresser Industries, Inc., D.C.

N.Y.1956, 19 F.R.D. 513; Rule 34 is therefore, to be liberally construed. June v. George C. Peterson Co., 7 Cir., 1946, 155 F.2d 963; Karlsson v. Wolfson, D.C.Minn.1956, 18 F.R.D. 474. * * *

"Granting or denying a request under rule 34 is a matter within the trial court's discretion, and it will be reversed only if the action taken was improvident and affected substantial rights. Carter v. Baltimore & O. R. Co., 1945, 80 U.S.App.D.C. 257, 152 F.2d 129, 130; Atlantic Greyhound Corporation v. Lauritzen, 6 Cir., 1950, 182 F.2d 540; Sher v. De Haven, 1952, 91 U.S.App.D.C. 257, 199 F.2d 777, 781, 36 A.L.R.2d 937; Bank of America National Trust & Savings Ass'n v. Hayden, 9 Cir., 1956, 231 F.2d 595, 606; 2 Barron & Holtzoff (1950), Sec. 803, p. 526."

■■ The defendant contends that the plaintiff has failed to meet the "good cause" requirement of Rule 34 for the reasons that (1) the employment of competent and experienced counsel by the plaintiff shortly after the accident, and the solvency of plaintiff's testator, placed plaintiff in a position to make a thorough investigation of all relevant facts and circumstances, and make full utilization of the discovery rules, and (2) since the identity of the witnesses was revealed, the plaintiff has at all times been at liberty to take their written statements, or failing in that, to take their depositions. The answer to the first contention is that rules must be universal in their application, and courts should not be called upon to decide motions of this type on the narrow basis of competency of counsel or solvency of the parties. Such an approach would create more problems than it would solve. The answer to the second contention is that the taking of a separate written statement, or the taking of a deposition, would give no assurance of a full disclosure of all the facts or that both parties had

obtained the same version of the accident. In cases of this sort, "where much may depend upon the necessarily uncertain memory of a few individuals as to what occurred in the space of a few minutes or a few seconds, it is important and, indeed, necessary that both parties should have access to such more or less contemporaneous record of events as may exist." Pennsylvania R. Co. v. Julian, D.C.Del. 1950, 10 F.R.D. 452, 453. Statements taken at about the time of an accident are unique in that they constitute the immediate impression of the facts. There can be no duplication by further statements or depositions that rely upon memory, and it has been held that an allegation of the existence of written statements such as here involved, uncontroverted, is a sufficient showing of good cause. Brown v. New York, New Haven & Hartford R. Co., D.C.S.D.N.Y. 1955, 17 F.R.D. 324.

■■ The defendant further asserts that the written statements are privileged, both as communications from client to attorney and as the "work product" of counsel. There is no merit to this argument. Plaintiff does not seek to intrude into the mental process of defendant's counsel, their strategy, or their legal theories involved in their preparation for trial. Thus, the question is not here involved that was present in the Hickman case, where the moving party made a broad demand for statements prepared by an attorney from his recollection of oral interviews with witnesses. Further, it should be noted that the witnesses' statements sought by the plaintiff were obtained by the defendant prior to the institution of this action. It has been repeatedly held that the privilege and immunity asserted by the defendant does not extend to matters obtained by a party himself or his agent. Thomas v. Pa. R. Co., D.C.E.D.N.Y.1947, 7 F.R.D. 610; Smith v. Washington Gas Light Co., D.C.D.C.1947, 7 F.R.D. 735; Hughes v. Pa. R. Co., D.C.N.Y.1948, 7 F.R.D. 737; Royal Exchange Assur. v. McGrath, D.C.N.Y.1952, 13 F.R.D. 150;

2 Barron & Holtzoff, 1950, Sec. 798, p. 509. Under the circumstances here presented, the written statements sought by the plaintiff are not privileged as communications from client to attorney. Neither can they be called the work product of counsel.

It should be borne in mind that discovery is a two-edged sword, and is available to plaintiffs and defendants alike. Concededly, it may work to the advantage of one party and the disadvantage of another party in a particular situation. But it is available in all types of cases and transcends the particular problem now before the court. It is believed that the advantages of a liberal and broad interpretation of the discovery rules will aid materially in the quest for truth, the ultimate objective of all courts, and that its advantage far outweighs any disadvantage, real or imaginary.

One other factor worthy of note is that, under the rules of this court, each party is required to disclose, in advance of pre-trial, the names and addresses of all witnesses then known which will be offered at the trial, together with a brief statement of what counsel proposes to establish by the testimony of each witness. Since the names of witnesses, *and the nature of their testimony,* must be disclosed in advance of pre-trial, it is difficult to understand how a party could be materially prejudiced by making the disclosure during the discovery period.

There can be no doubt as to the relevancy of the statements obtained from witnesses to the collision. There is no merit to the privilege and immunity asserted by the defendant, and no showing of undue prejudice has been made. Under these circumstances, and in the interest of a liberal policy requiring a full and complete disclosure of all relevant and non-privileged facts, the witnesses' statements referred to in Item No. (9) should be produced.

### Item No. (10)

Item No. (10) seeks the production of investigative reports of the collision made by the defendant's local claim agent to the chief claim agent. By stipulation of counsel, the reports were examined by the court. They contain only mental impressions of the claim agent and his personal evaluation of the facts. Should material of this character be made available to opposing counsel, much of what is now put in writing would remain unwritten, and amicable settlements would be made more difficult. Further, the disclosure of such information would neither aid opposing counsel nor promote the cause of justice. Hickman v. Taylor, supra. This is not to say that such reports would never contain relevant and non-privileged facts. For example, if investigative reports should include interviews with witnesses whose written statements were not taken, or other similar material, it might well be that all or a portion of such reports should be produced.

It is concluded that the investigative reports in question do not constitute or contain matters relevant to the subject matter here involved, or matters reasonably calculated to lead to the discovery of admissible evidence, and that they should not be produced.

Counsel for the plaintiff will prepare and present to the court an order requiring the production, within three days from the date of entry of the order, of all the matters sought in Items Nos. (1) through (14), except the matters sought in Item No. (10).