John **REDFERN**, Libelant,

v.

**AMERICAN PRESIDENT LINES, LTD.,**
a corporation, et al., Respondents.

No. 28393.

United States District Court
N. D. California, S. D.

June 10, 1963.

Marvin Stender and Martin J. Jarvis, San Francisco, Cal., for libelant.

Lillick, Geary, Wheat, Adams & Charles, San Francisco, Cal., for respondents.

SWEIGERT, District Judge.

Libelant, an oiler aboard the SS President Hoover, who allegedly dislocated his left shoulder on May 24, 1961, while attempting to hand-turn a massive valve at the direction of his superiors, brings an action in admiralty under the Jones Act, 46 U.S.C. § 688, and General Maritime Law against respondent American President Lines, Ltd., the owners of the vessel, alleging negligence and unseaworthiness.

The case is before the Court on two motions by libelant. The first motion is for an order compelling respondent to produce for inspection and copying by libelant 1) written notes made by Van de Water, employed in respondent's Insurance and Claims Department, prepared on June 15, 1961 from statements obtained by him from Chief Engineer Henry and Second Assistant Engineer Browne of the SS President Hoover; 2) the Ship's Officer's Accident Investigation Report, dated May 26, 1961, prepared by Chief Mate Peaslee of the SS President Hoover following his investigation of libelant's accident; 3) the written report, exclu-

sive of opinions and conclusions, prepared by one Walsh, a consulting engineer and ship surveyor, who examined and tested the valve.

Libelant's second motion is for an order granting exceptions to respondent's answers to certain interrogatories propounded by libelant and for an order compelling respondent to answer or give further response. The interrogatories in issue requested respondent to set forth in full the contents, or attach a photocopy, of the written notes prepared by Van de Water, (Questions 21 and 22) and of the Peaslee report (Question 24) and, further, to set forth the factual condition and operation of the valve as found by expert Walsh without stating his opinion and conclusions (Question 33).

■ With respect to the motion concerning interrogatories pertaining to the same subjects, this Court follows the rule that the contents of such papers and documents as are sought here must be obtained by a motion for production and copying of documents under Admiralty Rule 32 (counterpart of F.R.Civ.P. 34), requiring a showing of good cause, rather than through interrogatories under Admiralty Rule 31 (counterpart of F.R.Civ. P. 33). Alltmont v. United States, 177 F. 2d 971 (3rd Cir. 1950), cert. den. 339 U. S. 967, 70 S.Ct. 999, 94 L.Ed. 1375 (1950); American Steamship Co. v. Great Lakes Towing Co., 199 F.Supp. 105 (W.D.N.Y.1961).

An affidavit of Wentker, proctor for respondent, shows:

That the operation of respondent's business requires the keeping of certain records—the Official Log, Pre-sign on Records, Report of Ship's Surgeon, Engine Log Book, the Deck Log Book and the Medical Log; that all information contained in these records has been forwarded to libelant's proctor; that respondent, in addition to the above records, maintains an Insurance and Claims Department in which Van de Water is respondent's agent; that respondent requires that various persons on its vessels prepare a Ship Officer's Accident Investigation Report, not for the operation of respondent's vessels, but solely for communication to respondent's Insurance and Claims Department and its attorneys, for the defense of claims against the vessel; that pursuant to that requirement Chief Mate Peaslee, on May 26, 1961, made an on-board ship investigation in the area where libelant claimed his May 24, 1961 injuries occurred; that the report of this investigation was forwarded to respondent's Insurance and Claims Department with a copy going to respondent's proctors, but has not been produced for libelant; that on June 15, 1961, when the SS President Hoover returned to San Francisco, Van de Water interviewed Henry, Chief Engineer, and Browne, Second Assistant Engineer, and the conversations were reduced by Van de Water to a written memorandum, a copy of which was forwarded to respondent's proctors for the preparation of the defense of the vessel's interests insofar as any claim for maintenance, medical care, unearned wages, money damages, or transportation would be involved; that after the filing of the present libel, respondent's proctors engaged the services of Walsh, a consulting engineer and ship surveyor, to investigate and report to respondent's proctors concerning the valve allegedly involved in the injury and Walsh made his report solely to aid respondent's proctors in the defense of the vessel's interests.

The Wentner affidavit further states that: Although a claim for money damages did not begin until the filing of the libel herein, the libelant's reporting of an alleged accident aboard the vessel and his leaving of the vessel in Japan for hospitalization made him in effect a claimant against respondent for maintenance, medical care, transportation and unearned wages and, further, that it was obvious that libelant, who had on several prior occasions sued respondent, would commence a suit for damages.

An affidavit of Jarvis, proctor for libelant, states that the Ship's Officer's Accident Investigation report prepared by Peaslee on May 26, 1961, was made under 46 U.S.C. §§ 201, 202, requiring the entry

in the Ship's Log of any injury to any crew member with the nature and medical treatment thereof and, therefore, in the ordinary course of respondent's navigational business; further, that Henry and Browne, who were interviewed by Van de Water, were libelant's superior officers and that libelant has not been able, himself, to obtain their statements because they have been absent from the jurisdiction, and, further, that although the opinions and conclusions of expert Walsh are not requested, information obtained by Walsh concerning the actual condition and operation of the valve in question is relevant, necessary and discoverable especially because libelant claims that the valve had been lubricated after libelant's accident and before examination by Walsh; and, further, that Walsh, in the course of his examination, changed the condition and operation of the valve.

Respondent contends—1) That the materials sought are absolutely protected from discovery by the attorney-client privilege; 2) that, further, the material constitutes the work product of counsel and, 3) that libelant has not made the showing of good cause required by Admiralty Rule 32 or the showing of special necessity required under the so-called work product rule of Hickman v. Taylor, 329 U.S. 495, 67 S.Ct. 385, 91 L.Ed. 451 (1946).

The first question is whether the attorney-client privilege extends to any of the material obtained by respondent in the manner and for the purposes above described.

Respondent cites and relies upon Gene Compton's Corporation v. Superior Court etc., 205 Cal.App.2d 365, 23 Cal.Rptr. 250, 251 (D.C.A.1962) in which the state court held that reports of defendant's own manager and another employee, concerning an accident to a customer on defendant's premises, sent pursuant to the terms of an insurance policy to defendant's insurance carrier for ultimate delivery to an attorney to be appointed by the carrier to represent defendant in the event of litigation, was within the attor-

ney-client privilege and, therefore, protected from discovery. (See to the same effect, Holm v. Superior Court etc., 42 Cal.2d 500, 509, 267 P.2d 1025, 268 P.2d 722 (1954); Atchison, Topeka & Santa Fe Ry. Co. v. Superior Court, etc., 208 Cal.App.2d 73, 25 Cal.Rptr. 54 (D.C.A. 1962).

It is true that the California Court has held that, where the dominant purpose of reports and statements of witnesses prepared or taken under similar circumstances is transmission to an attorney in anticipation of litigation, such material is within the attorney-client privilege, if the reports and statements are from employees of the party as distinguished from independent witnesses. (See, Greyhound Corp. v. Superior Court, etc., 56 Cal.2d 355, 15 Cal.Rptr. 90, 364 P.2d 266 (1961).

Although the attorney-client privilege is recognized in the federal courts, including the federal court sitting in Admiralty (3 Benedict, Admiralty, Sec. 381 (b) p. 9), the trend of the federal courts has been to reject the attorney-client privilege as a ground for protecting from discovery under similar circumstances. (See Hickman v. Taylor, 329 U.S. 495, 67 S.Ct. 385, 91 L.Ed. 451 (1947); Moore's Federal Practice, vol. 4 pp. 1339–1345 and cases there cited).

For example, in Dugger v. Baltimore & O. Ry. Co., 5 F.R.D. 334 (E.D.N.Y.1946), decided prior to Hickman v. Taylor, the Court held that a regulation of defendant's general counsel to the effect that all investigations conducted by the railroad's claims agents should be for the confidential use of its law department in order to enable it to prepare the defense of actual or threatened claims or litigation was not sufficient to cloak statements taken by investigators with the attorney-client privilege.

In Bifferato v. States Marine Corp. of Del., 11 F.R.D. 44 (S.D.N.Y.1951), decided subsequent to Hickman v. Taylor, supra, the Court, citing Hickman v. Taylor, held that production of statements of master and crew members and other witnesses should be ordered over the objec-

tion that the statements had been taken by an attorney for the defendant in preparation of defense and were in the attorney's possession and were, therefore, privileged.

■■ In view of the great weight of federal authority to the effect that statements taken in this manner and for this purpose are not within the attorney-client privilege and for the further reason that the extent to which the attorney-client privilege is recognizable in admiralty is not to be determined by state law (New England Newspaper Pub. Co. v. United States, 18 F.Supp. 674, 679 (D. Mass.1937), see, 1 Moore Federal Practice (2d Ed.1961) pp. 3728–3730, Sec. 0.322(2)), we conclude that libelant's motion to produce the Peaslee report and the Van de Water notes should not be denied upon the ground of attorney-client privilege.

For the same reasons and for further reasons set forth in Maginnis v. Westinghouse Elec. Corp., 207 F.Supp. 739 (E.D. La.1962), a case dealing with discoverability of an expert's report, we conclude that the motion for production of the Walsh report should not be denied upon that ground. (See, also, United States v. Certain Parcels of Land etc. (1959), 25 F.R.D. 192, a ruling by this Court on the same general subject.

■ Turning now to respondents' contention that the material in question constitutes the work product of counsel, we merely note that, even if it does, it would still be subject to discovery upon a showing of good cause for its production. (See Hickman v. Taylor, supra).

■ Whether the material sought for production is the work product of an attorney is important only insofar as such a determination may suggest a greater or lesser showing to constitute good cause.

Although it has been held that statements of witnesses obtained in the manner and for the purpose indicated by respondents' affidavit are not to be considered the work product of the attorney (See, Bifferato v. States Marine Corp. of Del., supra), we need not so hold for the purposes of the pending motion because we have concluded that a sufficient showing of good cause has been made to warrant production in any view of the matter.

■ Where, as in the instant case, it appears that one party has exclusive or superior control over the circumstances surrounding an event and exclusive or superior opportunity to know or ascertain the facts, good cause for discovery of statements obtained from witnesses exists—especially when it further appears that the witnesses, even though they can be located, are in such relationship to that party as supervisory employees or agents that their statements to the opposite party might be reluctant. Further good cause exists when it appears that statements of the witnesses have already been given to one party shortly after the event, when recollection was fresh, and that any statements obtainable by the other party must necessarily be later and less dependable.

We believe that this inequality of opportunity to ascertain the facts should ordinarily outweigh any element of inconvenience or unfairness to the more advantaged party. This is particularly true when the statements have been obtained, not by the attorney, himself, but by non-professional claims agents or investigators of a party in anticipation of claims or litigation. See, 4 Moore's Federal Practice, Sec. 26.23, pp. 1409–1419, (2d Ed.1962); People of State of Cal. v. United States, 27 F.R.D. 261 (N.D.Cal. 1961) a ruling of this Court.

■ As far as the statement of expert Walsh is concerned, it appears that his report was obtained by respondents' proctors in preparation for defense of the case. For this reason a Court should not lightly order discovery if it is possible for the other party to obtain a similar report. However, when it appears that the subject of the report of an expert was an instrumentality in constant use and subject to maintenance or change under the control of one party, the other party shows good cause for disclosure at least

of the actual condition and operation of the instrumentality at the time of such examination. (See, Maginnis v. Westinghouse, Elec. Corp. supra; United States v. Certain Parcels of Land etc., supra.)

For the foregoing reasons it is ordered that libelant's motion for production of the three items in issue be granted, provided, however, that respondent may delete from such items any content which is not factual or descriptive, e. g., opinions, conclusions, speculations, and provided, further, that if any question arises concerning deletions, the Court reserves power to order such deleted matter filed for identification for the purpose of examination in camera.

Libelant's exceptions to answers to interrogatories are denied.