SOUTHERN RAILWAY COMPANY, Appellant,

v.

Carl Talmadge LANHAM et al., Appellees.

No. 25148.

United States Court of Appeals Fifth Circuit.

Oct. 30, 1968.

Rehearing En Banc Denied March 4, 1969.

Burt DeRieux, Greene, Buckley, De-Rieux, Moore & Jones, James A. Eichelberger, Atlanta, Ga., for appellant.

Nolan B. Harmon, G. W. Thackston, Jr., Harmon & Thackston, Atlanta, Ga., for appellees.

Before GEWIN and THORNBERRY, Circuit Judges, and ELLIOTT, District Judge.

THORNBERRY, Circuit Judge:

This appeal arises out of a contempt citation and $2,000 fine levied against Appellant Southern Railway Company for refusing to comply with the district court's order requiring it to produce certain documents under Rule 34 of the Fed-

eral Rules of Civil Procedure. Appellees, plaintiffs below, instituted this suit, alleging negligent homicide of three members of their family who were fatally injured when the car in which they were riding collided with one of Southern's trains on May 4, 1965. Southern's Claim Department conducted its own investigation of the accident through its claim agent, J. B. Woods. As a result of this investigation, statements were obtained from the train crew shortly after the accident, which were incorporated in a report by Mr. Woods on May 7, 1965. Appellees did not interview the crew.

On October 3, 1966, appellees filed interrogatories seeking, among other things, information with respect to train schedules, names and addresses of witnesses, documents reflecting appellant's interoffice correspondence, photographs, facts about repairs to the crossing and the names and addresses of all persons filing claims as a result of any previous or subsequent accidents at the crossing in question. Pursuant to court order overruling its objections, appellant answered those interrogatories. Included in appellant's answers were the names and addresses of its train crew, the names and addresses of witnesses at the scene of the accident, the names of persons who had previously or subsequently filed claims against appellant as a result of collisions at the crossing in question, and the names, addresses and companies of authors of correspondence relating to the dangers at the crossing.

Appellees then filed a motion to produce all documents enumerated by the answers. The affidavits of counsel filed in support of the motion to produce recited that the documents sought were relevant to the action and were in the "possession, custody or control" of appellant; that appellees were financially unable to obtain the information contained in the statements, reports, and correspondence by depositions; and that the statements of the train crew taken shortly after the accident "will probably be more accurate" than later recollec-

tions. Appellant opposed the production of documents on the ground that appellees had failed to show "good cause" as required by Rule 34 of the Federal Rules of Civil Procedure. On the basis of appellant's possession and control of the files and letters, and, regarding the statements of the train crew, the likelihood that Southern's employees would be reluctant to answer appellees' questions and the unique value of statements taken shortly after the accident, the trial court found that the documents sought constituted evidence that would be "otherwise unavailable" unless production were ordered. The court concluded that appellees had therefore shown good cause and ordered appellant to produce the requested documents.

Southern, in a motion for reconsideration of the order to produce, reasserted its "good cause" objections and interposed two further objections, namely, that the accident reports compiled by its claim office contained the mental impressions and personal evaluations of its agents, and that the files containing records of other accidents included privileged communications with its counsel. On May 3, 1967 the court excepted from the production order those materials prepared by Southern's attorney for use in the litigation at hand, but reiterated the necessity to produce the materials compiled by J. B. Woods with regard to the accident in question and the materials dealing with other accidents.

Southern then filed with the court a notice of its refusal to produce the following documents:

(a) The statements of four members of the train crew taken by its claim agent shortly after the accident.

(b) Accident and status reports relating to this case prepared by its claim agent J. B. Woods and two other employees.

(c) Files containing the records and papers relating to other claims arising out of collisions at the same crossing.

It made available to the court for in camera inspection those documents which it declined to make available to appellees. Appellees thereupon filed a motion to strike Southern's answer to the complaint. This motion was overruled. Instead the court found Southern to be in "civil contempt of this Court" and imposed an unconditional fine of $2,000.00, payable within ten days, for its refusal to comply with the order to produce. Southern filed this appeal to challenge the contempt citation, thereby seeking immediate review of the orders compelling production.

## I. JURISDICTION

At the outset, we must decide whether this Court has jurisdiction of this appeal. Although the issue was not briefed by the parties or presented in the oral argument before this Court, there is a substantial question to be resolved regarding the appealability of the lower court's contempt order. It is well established that as to a party to a suit a civil contempt order is interlocutory and reviewable only upon appeal taken from a final judgment or decree. Fox v. Capital Co., 1936, 299 U.S. 105, 59 S.Ct. 57, 81 L.Ed. 67; Duell v. Duell, 1949, 85 U.S.App.D.C. 78, 178 F.2d 683, 14 A.L.R. 2d 560; 6 Moore's Federal Practice ¶ 54.-17. Although an adjudication of civil contempt is final and appealable as to a non-party who would be unable to appeal from the final decision on the merits, see McCrone v. United States, 1939, 307 U.S. 61, 59 S.Ct. 685, 83 L.Ed. 1108; Bessette v. W. B. Conkey Co., 1904, 194 U.S. 324, 24 S.Ct. 665, 48 L.Ed. 997, a civil contempt order issued against a party lacks the requisite finality because its validity can be tested by an appeal from the final judgment. Fox v. Capital Co., supra; Developments in the Law—Discovery, 74 Harv.L.Rev. 940, 996 (1961). On the other hand, an adjudication of criminal contempt is a final judgment and the contemnor, whether a party or non-party, may obtain immediate review by appeal. Union Tool Co. v. Wilson, 1922, 259 U.S.

107, 42 S.Ct. 427, 66 L.Ed. 848; Duell v. Duell, supra.

The trial court recited in the contempt order that appellant was found to be in "civil contempt." Under that characterization of the order it necessarily follows in these circumstances that this Court is without jurisdiction and that the appeal must be dismissed. The lower court's characterization of the order, however, is not conclusive. Nye v. United States, 1941, 313 U.S. 33, 42, 61 S.Ct. 810, 85 L.Ed. 1172; Cyclopedia of Federal Procedure § 87.09 (3d ed. 1964). Although the entitling of the order or recitals contained in the order may be considered, see Fox v. Capital Co., supra, the appellate court on review must determine whether the contempt is civil or criminal in light of the nature and purpose of the punishment. Shillitani v. United States, 1966, 384 U.S. 364, 369, 86 S.Ct. 1531, 1535, 16 L.Ed.2d 622; see Stewart v. Dunn, 5th Cir. 1966, 363 F.2d 591, 600, n. 5. The substance of the contempt rather than its form is our guide. Accordingly, this Court must determine whether the contempt order here is civil or criminal.

The important tests in determining the character of a contempt are the nature and purpose of the punishment. Donato v. United States, 3d Cir. 1931, 48 F.2d 142, 143; 4 Barron, Federal Practice and Procedure § 2422 (1951); see Fox v. Capital Co., supra. Civil contempt is "wholly remedial" serves only the purpose of a party litigant, and is intended to coerce compliance with an order of the court or to compensate for losses or damages caused by noncompliance. McComb v. Jacksonville Paper Co., 1949, 336 U.S. 187, 191, 69 S.Ct. 497, 499, 93 L.Ed. 599; Penfield Co. of California v. S. E. C., 1947, 330 U.S. 585, 590, 67 S.Ct. 918, 921, 91 L.Ed. 1117; McCrone v. United States, supra; Scott v. Hunt Oil Co., 5th Cir. 1968, 398 F.2d 810 [July 24, 1968]; 6 Moore's Federal Practice ¶ 54.17. Criminal contempt, on the other hand, is punitive, rather than remedial, serves to vindicate the authority of the court, and cannot be

ended by any act of the contemnor. Nye v. United States, 1941, 313 U.S. 33, 43, 61 S.Ct. 810, 813, 85 L.Ed. 1172; Fox v. Capital Co., infra; Gompers v. Bucks Stove & R. Co., supra; Barron, Federal Practice and Procedure § 2422, at 374–75. On the basis of these well-established principles, we conclude that the order before us is criminal. The order imposes an unconditional fine payable to the court for appellant's "wilful and wanton disregard for this Court's order of production." "It awards no relief to a private suitor." Nye v. United States, supra. It does not permit appellant to purge itself and remove the sanction by compliance with the court's discovery order. The contemnor does not "carr[y] the keys of his prison in his own pocket," and therefore the fine "operates not as a remedy coercive in its nature, but solely as punishment for the completed act of disobedience." Gompers v. Bucks Stove & R. Co., supra, 221 U.S. 418 at 442, 31 S.Ct. 492 at 498, 55 L.Ed. 797 at 806.

■ The absence of the Government as a party to this appeal does not deprive the citation for contempt of its criminal character. Appeal from an adjudication of criminal contempt is a recognized means of obtaining immediate review to test discovery orders. See Garland v. Torre, 2d Cir., 259 F.2d 545, cert. denied, 1958, 358 U.S. 910, 79 S.Ct. 237, 3 L.Ed. 2d 231; Hickman v. Taylor, 3d Cir. 1945, 153 F.2d 212, aff'd, 1947, 329 U.S. 495, 67 S.Ct. 385, 91 L.Ed. 451; Developments in the Law—Discovery, 74 Harv.L.Rev. 940, 996 (1961). "Appellate review of the final judgment of contempt involves power to review the civil element as well as the criminal and to grant relief affecting both." Hickman v. Taylor, supra, 153 F.2d at 214, n. 1. If the order of production was improper, the contemnor's refusal to comply was justified and the contempt conviction must be reversed. Thus the dispute on appeal is between the private parties to the original suit. The character of the contempt as civil or criminal, however, is fixed by the nature and purpose of the punishment and is not affected by the nature of the parties to the appeal. Cf. McCrone v. United States, supra, 307 U.S. at 64, 59 S.Ct. at 686, 83 L.Ed. 1108.

■■ Moreover, the procedure adopted by the trial court was consistent with the penalty imposed. It has been held that a wholly punitive sanction can be properly imposed only in a proceeding instituted and conducted as a criminal contempt. Gompers v. Bucks Stove & R. Co., supra, 221 U.S. at 444, 31 S.Ct. at 499; see Cliett v. Hammonds, 5th Cir. 1962, 305 F.2d 565. Consequently, a criminal sanction is invalid if imposed in proceedings that are instituted and tried as a civil contempt. Penfield Co. of California v. S. E. C., supra, 380 U.S. at 595, 67 S.Ct. at 923. In that event, the contempt is not considered criminal for purposes of establishing appeal. The usual procedure is to reverse the citation for contempt and remand it to the trial court in order that a proper civil penalty can be imposed or in order that a criminal proceeding can be conducted. Duell v. Duell, supra, 178 F.2d at 689. Here, the court acted sua sponte to hold appellant in contempt. Despite the recital of the trial court that the contempt was "civil," we view the proceeding below as one between the court, acting to vindicate its authority, on one side, and the appellant-contemnor on the other. The proceeding could properly be regarded as one for *criminal contempt*, and a criminal sanction was appropriate. Therefore, there was no "variance—between the procedure adopted and the punishment imposed." Gompers v. Bucks Stove & R. Co., supra, 221 U.S. at 449, 31 S.Ct. at 501.

■ Finally, a citation for criminal contempt pursuant to a refusal to obey an order of production is within the authority conferred on the district courts by Rule 37 of the Federal Rules of Civil Procedure. Hickman v. Taylor, 3d Cir. 1945, 153 F.2d 212, 214, n. 1, aff'd, 1947, 329 U.S. 495, 67 S.Ct. 385. Rule 37(b) (2) authorizes the district court to impose such sanctions as are "just" when any party "refuses to obey * *

an order made under Rule 34 to produce any document * * *." Accordingly, since the conviction for criminal contempt was final and appealable, and since appellant has filed a timely notice of appeal, we proceed to the merits of this controversy.[1]

## II. STATEMENTS OF THE TRAIN CREW—GOOD CAUSE

 The first question to be decided is whether the trial judge abused his discretion in finding that "good cause" had been demonstrated for the production of the statements of the train crew taken by Southern's claim agent shortly after the accident. Rule 34 of the Federal Rules of Civil Procedure requires that "good cause" be shown for the production of the documents sought to be copied or inspected. The Supreme Court has stated: "Rule 34's good-cause requirement is not a mere formality, but is a plainly expressed limitation on the use of that Rule." Schlagenhauf v. Holder, 1964, 379 U.S. 104, 118, 85 S.Ct. 234, 242, 13 L.Ed.2d 152. There is no settled understanding of what "good cause" means; and because the determination depends to a large extent upon the facts of each case, a wide latitude of discretion is necessarily vested in the trial judge. See Tiedman v. American

Pigment Corp., 4th Cir. 1958, 253 F.2d 803.

 It is clear, despite several district court decisions to the contrary,[2] that Rule 34 is not satisfied by showing simply that the desired papers are relevant to the subject matter of the action.[3] So much is commanded by the language of the rule itself. It seems equally clear that the demonstration of "good cause," required in all cases for the production of materials under Rule 34, need not be as great as the showing of "necessity or justification" required to overcome the qualified immunity from discovery conferred upon the "work product of an attorney" under Hickman v. Taylor, 1947, 329 U.S. 495, 67 S.Ct 385, 91 L.Ed. 451.[4] The work product exception is based on the public policy of preserving the independence of lawyers through the avoidance of unwarranted intrusion into their private files and mental processes. No such policy is involved where, as here, the movant seeks to obtain written statements of witnesses taken by a claim agent; and the underlying purpose of the discovery rules to provide free access to the facts can be given greater effect. 4 Moore's Federal Practice ¶ 26.23 [8-.2]; but see Alltmont v. United States, 3d Cir. 1950, 177 F.2d 971. Thus "good cause" requires something more than relevance and something less than the

---

1. It appears that the proceedings below also complied with the procedural requirements relating to contempt contained in the Criminal Rules. Rule 42(a) of the Federal Rules of Criminal Procedure authorizes the district courts of the United States to punish contempts summarily if the judge "saw or heard the conduct constituting the contempt" and it "was committed in the actual presence of the court." Appellant's refusal to comply with the court's discovery order, the contemptuous conduct, embodied as it was in a notice to the court to that effect, meets that requirement. Appellant filed its notice of appeal on June 30, 1967, within 10 days of the final order on June 21 holding it in contempt, and therefore met the requirement for appeal set forth in Criminal Rule 37.

2. E.g., Houdry Process Corp. v. Commonwealth Oil Ref. Co., S.D.N.Y.1959, 24 F.R.D. 58; Connecticut Mutual Life Ins. Co. v. Shields, S.D.N.Y.1955, 17 F.R.D. 273, 277; Guilford Nat. Bank of Greensboro v. Southern Ry. Co., D.N.C.1960, 24 F.R.D. 493, rev'd, 4th Cir. 1962, 297 F.2d 921.

3. Schlagenhauf v. Holder, supra; Guilford Nat'l Bank of Greensboro v. Southern Ry. Co., 4th Cir. 1962, 297 F.2d 921; Crowe v. Chesapeake & Ohio Ry. Co., E.D.Mich.1961, 29 F.R.D. 148.

4. Uncle Ben's Inc. v. Uncle Ben's Pancake Houses, Inc., S.D.Tex.1962, 30 F.R.D. 506; Durkin v. Pet Milk Co., W.D.Ark. 1953, 14 F.R.D. 385; 2A Barron & Holtzoff, Federal Practice and Procedure § 652.4 (Wright ed. 1961); Wright, Federal Courts § 87, at 337 (1963).

demonstration required to overcome the work product immunity.

■ Beyond these principles, however, the precise meaning of good cause is unsettled and has been the subject of sharp controversy, particularly with regard to witness statements secured in preparation for trial. There is a tendency on the part of many courts to require a strong showing of "special circumstances" which justify production.[5] A less rigid approach, however, seems desirable. As a district court has stated:

> The main objection to the good-cause-requires-special-circumstances treatment is that it reintroduces the sporting aspect which the Federal Rules were thought to have excised from judicial proceedings * * * In view of the liberal spirit of the rules, the court should be disposed to grant such discovery as will accomplish full disclosure of the facts, eliminate surprise, and promote settlement. What must be shown under the requirement of good cause in Rule 34 are such circumstances as give the court reason to expect that the beneficial objectives of pre-trial discovery will be achieved.

Crowe v. Chesapeake & Ohio Ry. Co., E.D. Mich. 1961, 29 F.R.D. 148, 150–151; accord Wright, Federal Courts § 87, at 338.

■ In the case before us, appellees sought and obtained an order compelling production of the statements of the train crew taken shortly after the occurrence of the accident by appellant's claim agent. There can be no doubt that information concerning the circumstances of the accident from those closely involved is important, even essential to the proper preparation of appellees' case, especially since appellees' decedents were killed instantly and cannot provide an account of the facts. The issue, however, is whether appellees need the *written statements* in the preparation of their case, or conversely, whether the desired information can be secured from the witnesses themselves through interviews or depositions. 4 Moore's Federal Practice ¶ 3408, at 2482–83. The fact that the statements are in the exclusive control of the railroad would seem unimportant if the substance of the statements can be obtained from alternative sources. See Guilford Nat'l Bank v. Southern Ry. Co., 4th Cir. 1962, 297 F.2d 921, 927. Thus, in determining good cause, "the ability of the movant to obtain the desired information by other means is also relevant." Schlagenhauf v. Holder, supra, 379 U.S. at 118, 85 S.Ct. at 242.

■ Appellant maintains that inasmuch as the crew members are available for depositions, good cause does not exist. A substantial number of decisions support appellant's position that the availability of the witnesses whose statements are sought obviates a finding of good cause.[6] This view, however, is unduly narrow, inasmuch as the real question is whether the movant can obtain the *facts* without production of the documents containing the original statements. Therefore, the likelihood that the movant, even though he presently can obtain statements from the witnesses by deposition, will not obtain the substantial equivalent of the prior statements he seeks to obtain through production should also be considered. See Advisory Committee's Note, Preliminary Draft of Proposed Amendments to Rules of Civil Procedure Relating to Depositions and Discovery, Nov. 1967, 43 F.R.D. 211, 232.

In this case, it is doubtful that appellees could presently obtain a full and accurate disclosure of the facts

5. E. g., Guilford Nat'l Bank of Greensboro v. Southern Ry. Co., supra; Hauger v. Chicago, Rock Island & Pac. Ry. Co., 7th Cir. 1954, 216 F.2d 501, 507; Scuderi v. Boston Ins. Co., D.Del.1964, 34 F.R.D. 463.

6. E.g., Uncle Ben's, Inc. v. Uncle Ben's Pancake Houses, Inc., supra; Richards v. Maine Central Rd., D.Me.1957, 21 F. R.D. 593; Goldner v. Chicago & N.W. Ry. System, N.D.Ill.1952, 13 F.R.D. 326.

through depositions of the train crew. In the first place, ten months elapsed before the suit was filed, and almost another year intervened before the interrogatories were answered and the motion to produce was entertained by the court. Statements taken at that point are likely to be unreliable due to the lapse of time. For this reason, statements taken from the witnesses shortly after the accident constitute "unique catalysts in the search for truth," Johnson v. Ford, D.Colo.1964, 35 F.R.D. 347, 350, in that they provide an immediate impression of the facts that cannot be recreated or duplicated by a deposition that relies upon memory,[7] and many courts have held that the mere lapse of time in itself is enough to justify production of the statements.[8]

Thus,

Even though the train crew and each of them might now be made available for interrogation by the plaintiff, the facts thereby disclosed would not necessarily be identical with the statements originally made by said train crew. Much time has elapsed, the memories of the witnesses involved would necessarily be dimmed with reference to the specific details of the events about which they originally had made statements. Their statements made immediately after the accident may and undoubtedly will

lead plaintiff to the discovery of material and relevant facts upon which to adduce competent evidence at the trial of this cause.

Herbst v. Chicago, R. I. & Pac. R. Co., S.D. Iowa 1950, 10 F.R.D. 14, 18.

 Moreover, the written statements were made by employees of appellant, who may be expected to be somewhat reluctant to answer fully questions propounded by one pursuing a cause of action against their employer. See Redfern v. American President Lines, Limited, N.D.Cal.1963, 228 F.Supp. 227, 231; Scuderi v. Boston Ins. Co., supra; cf. McDonald v. Prowdley, W.D.Mich. 1965, 38 F.R.D. 1, 3. Appellant urges that a specific showing of hostility or reluctance is required to establish good cause, see Guilford Nat'l Bank v. Southern Ry. Co., supra, 297 F.2d at 926; Goosman v. Duie Pyle, Inc., 4th Cir. 1963, 320 F.2d 45; Diamond v. Mohawk Rubber Co., D.Colo.1963, 33 F.R.D. 264, 266, and points to the ease with which the news media elicited information from the crew to indicate that the crew members were both accessible and cooperative. Nevertheless, the employment relationship would appear to create a situation of inequality between the parties with respect to gathering accurate statements from the crew. Redfern v. American President Lines, Limited, supra, 228 F.Supp. at 231; see 4 Moore's

7. "Clearly enough, we quickly forget the bulk of what we perceive, our retention decreasing as the time interval increases. Claim agents and adjusters long ago learned the difference in the value of a statement one day after an accident and one a month after it. Every trial lawyer knows how disconcerting it may be to have a witness, on cross examination, confronted with an old and forgotten statement. Signed statements from all important witnesses, at the first opportunity, in personal injury cases, are especially important where the trial may be long delayed or the opposing side has constant or easy access to the witnesses." Gardner, The Perception and Memory of Witnesses, 1933, 18 Corn, L.Q., 391, 393–394; 2A Barron & Holtzoff § 652.4, n. 22 (Wright ed. 1961).

8. Johnson v. Ford, supra; People of State of California v. United States, N.D.Cal. 1961, 27 F.R.D. 261; Brown v. New York, N.M. & H.R. Co., S.D.N.Y.1955, 17 F.R.D. 324; Durkin v. Pet Milk Co., supra; Herbst v. Chicago, R. I. & Pac. R. Co., S.D.Iowa 1950, 10 F.R.D. 14; De Bruce v. Pennsylvania R. Co., E.D.Pa. 1947, 6 F.R.D. 403, 406. These cases all involved the "good cause" requirement of Rule 34. Professor Wright suggests that the lapse of time should be sufficient to overcome the work product immunity. 2A Barron & Holtzoff § 652.4 (Wright ed. 1961). That question, however, is not before us here, inasmuch as the statements were obtained by appellant's claim agent, and we express no opinion on the matter.

Federal Practice ¶ 26.23, at 1418–19. It seems to be generally recognized that "the requirement of good cause is more easily satisfied when witnesses are employees than in the usual case," Guilford Nat'l Bank v. Southern Ry. Co., supra, 297 F.2d at 926; and we agree with the trial court that this was another factor favoring production. Good cause is therefore shown for production because the lapse of time and the employment relationship strongly suggest that the full and accurate disclosure of facts, which it is the purpose of the discovery process to secure, could not be accomplished through other means.

Appellant maintains, however, that the witnesses have been available from the beginning, and that appellees' failure to take advantage of previously available means of discovery negatives a finding of good cause. It argues that production should not be allowed where the moving party has failed to show a bona fide attempt to obtain the information by independent investigation. Goldner v. Chicago & N. W. R. System, N.D.Ill. 1952, 13 F.R.D. 326, 329; Diamond v. Mohawk Rubber Co., supra, 33 F.R.D. at 266; see Hauger v. Chicago, R. I. & Pac. R. Co., 7th Cir. 1954, 216 F.2d 501, 508. Although it recognizes the special value of witness statements taken soon after the accident, appellant maintains, as do some courts, that the lapse of time must be examined "in relation to the time that the movant should have first taken the depositions of the persons who made the statements or prepared the reports (diligence)." Scuderi v. Boston Ins. Co., supra, D.Del.1964, 34 F.R.D. 463, 467. Appellant's position is essentially this: Not only must the information sought through discovery be presently unavailable through other means, but, in addition, the movant must have exercised *due diligence* in attempting to secure the information. Appellees have not shown a *reason* for their inability to secure the information and thus "cannot be entitled to rely entirely upon the defendant's efforts." Guilford

Nat'l Bank v. Southern Ry. Co., supra, 297 F.2d at 926. Accordingly, it is argued, good cause for production does not, cannot exist.

▮ Certainly diligence by all parties in securing the facts in preparation for trial is an essential element in our adversary system of justice. Indeed, the work-product rule of Hickman v. Taylor, supra, seems to rest in large part on a policy of promoting diligence on both sides. The production of trial preparation materials in favor of a party who has failed to pursue previously available alternatives to obtain the desired information may seem inconsistent with that policy. See Developments in the Law—Discovery, 74 Harv.L.Rev. 940, 1034–35. On balance, however, the policy favoring free access to the facts would appear in these circumstances to outweigh any potentially adverse effects upon the adversary system that may result from production. It is not likely that defendants in accident cases will cease taking statements simply to avoid discovery. Such statements are usually essential to the proper defense of the action, and a party would always seek even discoverable evidence rather than lose his case. Cf. United States v. Myer, 9th Cir. 1968, 398 F.2d 66 [No. 21127, July 17, 1968]. Moreover, even if "due diligence" were required, there would be no way to ascertain in advance whether the plaintiff could nevertheless demonstrate good cause. Nor is it likely that allowing discovery will lead plaintiff's counsel to become lax in their own investigation and to rely exclusively upon the statements garnered by their adversary. The desire to conduct the course of questioning, to elicit further or more favorable information from the witnesses, to pursue other leads before the evidentiary trail turns cold, and to prepare for cross-examination at trial should generally prompt counsel to secure statements on his own even though the statements taken by the defendant might otherwise be available through the discovery process.

**130**

Discovery would not appear to prejudice appellant unduly though it is true that appellees will derive the benefit of appellant's diligence in securing statements from the crew. Our role in administering the discovery rules, however, is not to reward diligence or to penalize laziness. A lawsuit is not a contest in concealment, and the discovery process was established so that "either party may compel the other to disgorge whatever facts he has in his possession." Hickman v. Taylor, 1947, 329 U.S. 495, 507, 67 S.Ct. 385, 392, 91 L.Ed. 451. Moreover,

> The fact that one party acts swiftly and first obtains the facts, by the taking of statements or otherwise, gives that party no inherent right to secrete those facts and withhold them from the adverse party. If the adverse party can demonstrate good cause for the production of these facts, the Court should order the facts to be produced.

Durkin v. Pet Milk Co., W.D.Ark.1953, 14 F.R.D. 385, 398. We are not concerned here with an intrusion into the private files or the mental processes of an attorney. Discovery would not "enable a learned profession to perform its function either without wits or on wits borrowed from the adversary." Hickman v. Taylor, supra, 329 U.S. at 516, 67 S.Ct. at 396 (Jackson, J. concurring.) In the absence of other countervailing considerations, we must reject the rigid rule that the moving party must always show that he has been unable to obtain statements of his own from the witnesses. Accord People of State of Calif. v. United States, N.D.Cal.1961, 27 F.R.D. 261, 262; 4 Moore's Federal Practice ¶ 26.23, at 1416–17.

We find nothing in our decision in Southern Ry. Co. v. Campbell, 5th Cir. 1962, 309 F.2d 569, that requires a contrary holding. In *Campbell*, this Court sustained the district court's finding that good cause had been established where it was shown that the statements sought were taken by agents of the railroad soon after the occurrence of the accident and, further, that the plaintiff did not engage counsel until six months after the occurrence. Appellant construes that case to mean that the movant must show a *reason*, such as delay in obtaining counsel, for his inability to obtain the information sought by the motion. It does not follow, however, from a holding that the above factors were sufficient to establish good cause that anything less must be considered insufficient and that the movant is required in every case to show why he was unable to obtain statements on his own. *Campbell* constitutes a prior recognition by this Court of the unique value of statements taken from witnesses shortly after the accident and therefore supports our holding here.

We also observe that Guilford Nat'l Bank v. Southern Ry. Co., supra, upon which appellant relies heavily, is distinguishable from the instant action. In *Guilford* the Fourth Circuit held that good cause had not been demonstrated for the production of statements taken by the railroad in its investigation commencing one day after the occurrence of the accident in question. The plaintiff in that case, however, had interviewed witnesses on the sixth, seventh and eighth days following the accident, although he took no written statements. The court expressly recognized the special value of witness statements taken soon after the accident, but concluded that "there is no reason to suppose that an interview of a witness six days, or even nine days, after the accident is any less reliable than a statement taken on the day following the accident." 297 F.2d at 926. The court further stated:

> If there were circumstances indicating a distinct and irremediable disadvantage to a party who is compelled to rely on statements obtained by him later than those obtained by the other party, a different case might be presented.

Id.

In the case before us, as indicated, there was a considerable lapse of time between the occurrence and the filing of

suit and motion for production.[9] Depositions or interviews taken at that point would certainly be less reliable than the immediate impression of the facts contained in the prior statements. The account of the facts contained in the prior statements is therefore necessary to the adequate preparation of appellees' case, and the appellees would be placed at a substantial disadvantage if production were denied. The production of the statements will materially advance the "just, speedy, and inexpensive determination" of this action. Rule 1, Federal Rules of Civil Procedure; see Crowe v. Chesapeake & Ohio Ry. Co., E.D. Mich.1961, 29 F.R.D. 148, 151. Accordingly, we hold that the trial judge did not abuse his discretion in ordering the production of the statements of the train crew.

## III. ACCIDENT INVESTIGATION REPORTS—MENTAL IMPRESSIONS AND PERSONAL EVALUATIONS OF APPELLANT'S AGENTS

■ Next we consider the order to produce as it relates to the investigation reports prepared by appellant's claim agents. The reports encompassed by the court's order contain, in addition to witness statements and facts personally observed by the agents, the claim agents' opinions and conclusions drawn from the facts and interviews. It is well established that statements taken by a claim agent, as well as facts personally observed by him, are the proper objects of discovery. Southern Ry. Co. v. Campbell, supra. The issue, therefore, becomes one of whether the trial court abused its discretion in ordering the production of those portions of the investigation reports that reflect the mental impressions and personal evaluations of appellant's claim agents.

■ It appears that following an accident the claim agent or investigating officer for the railroad typically investigates the case and submits a report containing, among other things, his evaluation of the cause of the accident and whether it ought to be settled. These reports are valuable to the railroad in accident evaluation and in the disposition of claims. Nevertheless, disclosure of the opinions and recommendations contained in these reports could prove disadvantageous to the railroad, and the fear of discovery might deter it from seeking full and candid evaluations of the cause of accidents and the proper disposition of claims. Cf. Developments in the Law—Discovery, 74 Harv.L.Rev. 940, 1032 (1961).[10] As a result, "much of what is now put in writing would remain unwritten, and amicable settlements made more difficult." Guilford Nat'l Bank of Greensboro v. Southern Ry. Co., D.N.C.1960, 24 F.R.D. 493, 500, rev'd on other grounds, 4th Cir. 1962, 297 F.2d 921. Absent complete and honest reports, effective accident evaluation may be impaired and the prevention of future accidents hampered. See O'Keefe v. Boeing Co., S.D.N.Y.1965, 38 F.R.D. 329, 334. Therefore, we conclude that the discovery of those portions of the documents reflecting the mental processes and impressions of claim agents or investigators should be conditioned upon a strong showing of "necessity or justification," "hardship or in-

---

9. Appellant emphasizes that appellees' counsel was at the scene of the accident within a day of the occurrence of the accident. There is no indication, however, that he interviewed witnesses or was otherwise able to obtain information at that time which would enable him to adequately prepare the case. We therefore reject appellant's argument that both sides here, as was the case in *Guilford*, had a more or less contemporaneous record of the facts.

10. Such materials are distinguishable in this regard from witness statements, discussed previously, first, because they are not essential to the proper preparation of the suit, as are witness statements, and second, because the disclosure of an agent's opinions would generally prove more disadvantageous to the railroad than an account of the facts from a witness. It is therefore less likely that the fear of discovery of witness statements would deter either party from obtaining them.

justice" similar to that required to overcome the qualified immunity from discovery conferred upon the work product of an attorney under Hickman v. Taylor.[11]

 It has been suggested that any extension of the immunity from discovery beyond that necessary to avoid unwarranted intrusions into the files and mental processes of attorneys is inconsistent with the policy and scope of the Court's decision in *Hickman.* See 4 Moore's Federal Practice ¶ 26.23 [8.–1], at 1388. It is true that the Court's decision in *Hickman* was limited to matters obtained by an attorney in preparing a case for trial. Indeed, the Court's explicit emphasis on the special role of the attorney in our adversary system of justice may suggest that the holding of the case need not be extended to materials other than those prepared by an attorney. 4 Moore's Federal Practice, supra, at 1391; see E. I. DuPont De Nemours & Co. v. Phillips Petroleum Co., D.Del.1959, 24 F.R.D. 416, 420. Moreover, the Court made it clear that the "discovery rules are to be accorded a broad and liberal treatment" and that "mutual knowledge of all the relevant facts gathered by both parties is essential to proper litigation." Hickman v. Taylor, supra, 329 U.S. at 507, 67 S.Ct. at 392. Nevertheless, *Hickman* strongly suggests that the policy favoring free access to the facts must submit, at least to some degree, where countervailing considerations, such as those applicable when an attorney's privacy is involved, stand opposed to disclosure.[12] In all but clear cases the policy favoring discovery should be given effect and a greater showing ought to be required only where the opposing considerations are substantial. We think, however, that the potentially adverse impact that may result from disclosure of the opinions and evaluations in question is sufficient to warrant the requirement of a special showing for their disclosure.

 No such showing has been made in the case before us. With respect to the report filed in connection with the accident giving rise to the present actions, as well as those relating to a subsequent accident, it is clear that disclosure of the opinions and evaluations of appellant's agents would neither materially aid opposing counsel nor promote the cause of justice. Guilford Nat'l Bank v. Southern Ry. Co., supra; cf. Diniero v. United States Lines Co., S.D.N.Y.1957, 21 F.R.D. 316, 317. No doubt opposing counsel would like to confront the railroad with an evaluation or recommendation from its own agent that tends to undermine the railroad's case. But the agent's impressions are by no means necessary for the adequate preparation of appellees' case.

11. Accord, State of Calif. v. United States, supra, N.D.Cal.1961, 27 F.R.D. 261, 262; Virginia Metal Prod. Corp. v. Hartford Acc. & Indem. Co., S.D.N.Y.1950, 10 F.R.D. 374, 376; see Adams v. United States, 5th Cir. 1958, 260 F.2d 467; 2A Barron & Holtzoff, Federal Practice and Procedure (Wright ed. 1961) § 652.2 at 133.

The court in State of Calif. v. United States, supra, reached the same result by a somewhat different route:

Generally, such material contained in an investigative report is subject to correction and even to rejection by the party who caused the investigation to be made. Although such a report is not entitled to protection under the "attorney-work-product" privilege * * * where it contains material in the nature of opinion, theory, or recommendation, made either by witnesses or the investigator, such a document partakes of the nature of an attorney's notes in preparation of his case, and production of such material should, therefore, be conditioned upon a strong showing of necessity.

27 F.R.D. at 262.

12. Cf. Wright, Federal Courts § 87 at 337: "Similarly an especially rigorous showing of necessity is required where there is a qualified privilege, such as that for government secrets, *or where there is some policy against disclosure of a particular kind of information*, such as the policy of preserving the secrecy of grand jury proceedings." (Emphasis added)

■ The investigation reports contained in the files of two prior claims arising out of an accident at the same crossing stand on a somewhat different footing.[13] The prior claims could constitute notice of the dangerous nature of the crossing, and under the applicable Georgia substantive law, may be admitted as evidence at trial. Western & Atlantic R. Co. v. Slate, 1918, 23 Ga.App. 225, 97 S.E. 878. Appellees maintain that the evaluations, conclusions and recommendations contained in the reports are unique and must be discoverable in order to establish what actual notice the railroad might have had. But the factual elements of these reports—witness statements, facts personally observed by the agents—are discoverable, and these materials should be sufficient to enable appellees to prepare this aspect of the case. An allegation of actual prior notice of danger can be supported without evidence that the railroad's investigating officers *actually thought* the crossing to be dangerous. We cannot conclude, in any event, that the denial of such production would "unduly prejudice the preparation of [appellees'] case or cause [them] any hardship or injustice." Hickman v. Taylor, supra, 329 U.S. at 509, 67 S.Ct. at 392.[14]

Accordingly, we conclude that the trial judge abused his discretion by including within the order of production those portions of the accident investigation reports which reflect the mental impressions and evaluations of appellant's agents. On remand, therefore, appellees should be allowed to examine only those portions of the reports that contain the statements of witnesses and recitals of facts personally observed by the investigator, but not such portions as contain mere opinions, theories or recommendations expressed by appellant's claim personnel. See State of Calif. v. United States, supra, 27 F.R.D. at 262.

## IV. ATTORNEY—CLIENT COMMUNICATIONS

■■ We now consider appellant's assertion that the trial court erroneously required it to produce documents contained in the files of other accidents reflecting communications between attorney and client, which are privileged and immune from discovery. The attorney-client privilege was first raised, along with the work-product objections, in appellant's motion for reconsideration of the court's order to produce. Appellees maintain that the objection was not timely and that appellant has therefore

13. There is some question regarding the application of the discovery order to the contents of the files dealing with prior claims. The court's order of April 15, 1967, encompassed the "file containing records of previous and subsequent accidents occurring at the crossing in question." (R. 94). Then, in its order of May 3, 1967, the court stated that "the materials compiled by its agent J. B. Woods with regard to the accident in question *and the materials dealing with prior accidents must be produced.*" (R. 105). On the other hand, in the order in which it held appellant to be in contempt, the court stated that "what the court has ordered produced are the statements of [the train crew] * * * and the documents prepared by the defendant's claim agents who * * * filed reports concerning *the accident* as a routine duty of their employment." (R. 117) The last order would seem to indicate that only materials filed in connection with the accident giving rise to the instant

case were to be produced, whereas the previous orders explicitly encompassed the materials dealing with other accidents as well. The last order, however, did not specifically advert to the files of other acidents, and it is therefore unlikely that the trial judge intended, in the absence of clear language to that effect, to restrict that portion of the prior orders. Accordingly, we proceed on the assumption that the discoverability of opinions and evaluations reflected in investigation reports contained in the files of the other accidents is at issue here.

14. We think that the reasons heretofore stated for requiring a special showing for disclosure apply with equal force to opinions expressed in reports filed in connection wth prior accidents. The fear of discovery of materials which might prove disadvantageous in connection with later claims may likewise deter the railroad from obtaining a full evaluation of accidents.

**134**

waived the privilege. The trial court, however, explicitly rejected the waiver argument, a conclusion entitled to weighty consideration on appeal. Although the court was referring to the work-product objection, there is no basis for treating the attorney-client privilege differently, inasmuch as it was raised in the same motion. Appellant has not voluntarily made the challenged materials available to the other party, see United States v. Kelsey-Hayes Wheel Co., E.D.Mich.1954, 15 F.R.D. 461, and there are no other circumstances supporting a finding of waiver. See generally 4 Moore's Federal Practice ¶¶ 33.27 and 33.29[3]. We therefore consider the privilege issue on its merits.

The trial court's treatment of this matter is unclear. Following appellant's motion raising both work product and privilege, the court addressed itself to the "work product privilege," but failed to advert specifically to the attorney-client privilege. In the order imposing the fine for contempt, the court exempted "work product" from discovery, but again made no direct mention of privileged communications between appellant and its attorneys. It is quite possible that the court was using the term "work product" in a broader than usual sense and that its statement that *these letters* and opinions of the defendant's counsel are clearly not discoverable" (R. 117, emphasis added) encompassed the communications between attorney and client. In that event, appellant's objection was cured and there was no error. On the other hand, the court may have used the term "work product" in its usual sense, in reference to materials compiled by appellant's attorneys in preparation for trial, as distinguished from privileged communications between attorney and client, see Hickman v. Taylor, supra, and therefore may have intended to include the challenged correspondence in its order to produce. In

that event, the order of production was overly broad and it was error to punish appellant for its refusal to produce these materials.[15]

The court's orders are susceptible of either construction and we are unable to choose one over the other. We therefore hold that on remand the trial court should reconsider and clarify this portion of the order. If privileged communications between appellant and its counsel were encompassed by the court's order to produce, they must be deleted.

Finally, appellant argues that the contempt order is self-contradictory and therefore invalid because it punishes appellant for refusing to produce documents which the court recognized to be immune from discovery. This contention is based on the court's statement in the contempt order that "work product" contained in the files of other accidents was immune from discovery, whereas the prior order to produce had exempted only work product related to the instant litigation. Appellant insists that the court punished it for refusing to produce *all* the documents encompassed by the previous order, including those later recognized to be immune from discovery. We disagree. The court explicitly stated in the contempt order that these materials were "not discoverable" thereby relieving appellant of its duty to produce the documents in question. There is therefore no reason to believe that the court took appellant's refusal to produce these documents into account in adjudging it in contempt and levying the $2,000.00 fine. Appellant's contention is thus without merit.

In conclusion, we hold: (1) that the statements of the train crew were properly discoverable; (2) that while the factual elements of the accident investigation reports were discoverable, those portions of the reports reflecting the opinions and evaluations of ap-

15. The limitation on discovery that it may extend only to matters "not privileged" corresponds to the rules of evidence, and therefore would exempt from discovery confidential communications between attorney and client. See 2A Barron & Holtzoff, Federal Practice and Procedure, § 651 (Wright ed. 1961).

pellant's agents were not discoverable; and (3) that the trial court must clarify the order as it relates to the attorney-client correspondence, deleting privileged communications, if any, encompassed by the order to produce. There remains a question as to appellant's fine. Inasmuch as part, but not all, of the court's order to produce was invalid, some of the documents were correctly subject to appellant's refusal to produce. This may naturally call for a reduction of the fine. A modification of the sanction, however, ought not be made by the appellate court on review, but should be left on remand to the discretion of the trial court. Yates v. United States, 1958, 356 U.S. 363, 366, 78 S.Ct. 766, 768, 2 L.Ed.2d 837; Nilva v. United States, 1957, 352 U.S. 385, 77 S.Ct. 431, 1 L.Ed.2d 415. Accordingly, the judgment of the district court is vacated and remanded for reconsideration of the fine and for further proceedings not inconsistent with this opinion.